The next case for argument is 16-2668 Singh v. USPS Why don't we give the other side a chance to get set up? No, no, you can stay, you can stay, just a minute. Okay, it looks like they're ready. Please proceed. Yes, your honors, I'd like to thank you for your time today. I want to begin by discussing charge number two because so much of this case hovers around how charge number two is treated. The first issue of charge number two is that there was a grievance error made in both the initial decision and in the appeals insofar as there's a missing Hillen analysis. There's no Hillen analysis ever performed for Mabel Gonzalez regarding whether or not she actually did or did not instruct my client to take the statement of Robin Rogers. This absence makes it somewhat between difficult and impossible to say exactly what happened there. If were a Hillen analysis performed, the Hillen analysis would favor my client. So to cover the factors very quickly, both are the only relevant witnesses. There was no other person who was present when that order was given according to testimony of either. Both are in similar positions to observed, both have similar qualities of character, both have similar qualities of bias. And as to the probability or improbability, both involve either. One is an accusation that a supervisor with no history went and took part in what was an obvious conflict of interest in taking the statement. And the other is whether a supervisor ordered that to happen. The one area where they're different is the level of recollection that both of them have. My client recalled what was testified. My client said he was sent to do so. When Mabel Gonzalez was asked, she did not say I didn't give that instruction. She did not say we didn't give that instruction. What she said is I don't recall giving that instruction. So you want us to revisit the credibility determinations made below? Is that what you're asking? I want a credibility determination of Mabel Gonzalez made. Whether that's by this court or whether it's by kicking that down to make a decision at one of the lower levels, that decision was never made. It was Does that make sense? So what was the conclusion sustaining, I mean the board sustained the second specification. The board sustained the second specification based only on the credibility of Robin Rogers and the credibility of Preet Singh. On the other hand, it did so by disregarding the issue whether Preet Singh was instructed to make the, was instructed to take the statement to begin with. A lot of this conflict in the second charge is whether or not Preet Singh was taking part in an order he had been given when he did things such as requesting that she clarify and not use pronouns he and he, which Singh her statement was regarding, as both of the individuals involved in the altercation had the same last name and the same gender. We can't make that credibility determination. I understand you can't, but on the other hand, you could send it back for credibility determination for additional proceedings. Yet if the decision is supported by the evidence, by the credibility determinations that they did make, by substantial evidence, then aren't you asking us to rule on something that just could be like harmless error if it was error? I don't think that is harmless error. There's, because so much of what's relevant in a charge like that is the intent. Whether or not Mr. Singh's intent was to modify the, was to modify the statement or whether his intent was simply to fulfill an order that he had been given by Mabel Gonzalez is core to what happened in that charge. And why, why didn't the, this was already done below, right? I mean the, the, the administrative judge heard the testimony of all these parties, right? The administrative judge heard the testimony of all those parties, right? But never ruled one way or another whether or not that order was actually given. Simply disregarded whether or not the order was given. Is the order from Ms. Gonzalez? Is that? Yes, the order is from Ms. Gonzalez. And did she testify? I should know this. She did testify. Okay. And what she testified was that she does not remember giving that order, which is as close to a non-denial denial as a person can give. I will tell you that if I were in her position, even if I didn't remember exactly what orders I'd given one way or the other, I would tell you I would never make an order like that. That order involves ordering someone to do something and have a conflict of interest. Even were I not the sort of person that I was, I might have said I would never give an order like that. So how, how can it, how can it be the case that the administrative judge's determination here doesn't at least implicitly include a determination, a credibility determination against the version of the I got an order events that your client was presenting? I think that the judge, I believe the judge made a mistake. I believe that what the judge did was simply rule regarding, there were so many conflicts that would be pointed out in other testimony by other witnesses that the judge largely skimmed over the issue of that and simply looked at, was there sufficient basis to determine credibility for the witnesses who saw the fight? Was there enough credibility to decide whether or not Robin Rogers was telling the truth in her statement about the conversations that she had with Mr. Singh and his role in taking her statement? But the problem is that ignores that there is a motive allegation. I think that what happened is the judge, the judge treated this as if all actions are equivalent regardless of motive and an attempt to, and the charge of interfering with an investigation requires an attempt to deceive, requires an attempt to prevent the investigation from moving forward. And that element was never discussed one way or the other. Well, they did find that, that there was interference with the preparation of the statements. Again, again, that decision was made based largely on what the statements were and based on his actions. I don't think the judge made a decision regarding his motive. Well, look at page appendix 11. I find that based on own admission, he engaged in improper conduct. I mean, he made findings about what happened. So what's wrong with those findings other than you think he believed the wrong person? What's, what's wrong with those findings besides the, besides the credibility determination, besides the credibility issues that we've already raised under Hill and the various conflicts under different individuals, the judge did not take, did not take into account that his motive was not to interfere, that his motive was simply to do what he had been instructed. But there, they did find that. They found, again, Judge Proshregi, the language, it's appellant's own admission that he engaged in improper conduct. He attempted to alter the written record. But, the issue is that What are you looking for? What more, what more is there? The issue is that what he admitted to, he didn't admit to changing the substance of her statement. What he admitted to was making a clarification on time, whether she was using military or regular time for clarity. And the second issue that he admitted was that he had asked her to not use pronouns and make clear which individuals he was referring to, she was referring to when he said And the finding was that that was interference with the taking of the statement. But the question, so, if he were ordered to take the statement, how could that have possibly interfered when it was solely aimed towards making the statement more clear? I guess, I don't know why him interfering with and the finding that he pressured her into writing a statement which did not accurately capture her own observations and instead was what the appellant believed had occurred. Why even matters whether or not they said, well, you should make sure we get a statement from her. That doesn't go to whether or not he should have gotten a statement from her. It goes to his conduct and what he did in trying to interfere with the statement. So, I'm not even understanding why that threshold matter is dispositive of anything. Am I understanding you, though, that you're emphasizing the difference between whether or not he was told to go make sure she writes down her statement? Again, because it appeared, we're running short on time and there are other issues I'd like to address. But, again, this seemed a major issue because, again, when you're assessing his intent, which is an element to this, may I move forward to another issue? Sure. Okay. Another major issue to get to, pardon me, is the mitigation of charge number one under Foucher. Whether or not charge number one should have been mitigated was ruled on in a capricious way. The judge, rather than discussing what mitigation was appropriate and whether or not mitigation would have or would have not still warranted dismissal based on the support of charge number two, what the judge instead ruled was the judge added an element to Foucher's mitigation standard. And that element was that there was a second charge made at the same time, and that second charge was upheld. But Foucher was very clear what its standards are. The Foucher standard is that there was no history of prior discipline, that no weapon was used, that there was an element of provocation. And from those, oh, and there's, yeah, no, I'm sorry, it was those three. So the judge essentially ordered another one capriciously. And then in writing the analysis, didn't say that removal was warranted simply based on charge number two. The judge's statement was that removal was warranted solely based on charge number one, which again was, this is similar to the agency's claim that Foucher may not have occurred when there was a zero tolerance policy for violence. Whether or not mitigation is appropriate, whether there's a zero tolerance policy, again, isn't one of those elements. The element is whether or not someone was reasonable in behaving as they did. And in this case, you have, my client was giving, was yelled at by an employee who then turned around, walked away. My client thought the encounter was over. The employee then came back muttering under his breath and attacked my client. I still want to have some time left over for rebuttal. Sure. Well, let's hear from the governor. Ten years' time. Good morning. May it please the court. The MSPB's decision sustaining the Postal Service's removal of Mr. Singh for improper conduct based on two specifications is supported by substantial evidence. I'll turn first to specification number two since that was the subject of much discussion by my opponent. There's no dispute here based on Mr. Singh's own admissions that he injected himself into the substance of what Ms. Rogers was trying to record as part of her statement. Mr. Singh's testimony before the administrative judge was that it was fairly benign in that he claims he was only attempting to change her use of pronouns and her recording of time. But Ms. Rogers' testimony was that his interference went far beyond that. He was standing over her shoulder. Can I just back up? You said inject and then interfere. Is there not a dispute about whether he was asked by his supervisor to go  I'm trying to use as neutral terms as possible. Yes, Your Honor. That is correct. Mr. Singh's testimony was that Ms. Gonzalez told him to go to Ms. Rogers and get a written statement from her. Ms. Gonzalez's testimony before the administrative judge was that she did not recall giving Mr. Singh that instruction. However, she also testified, importantly, that, as she put it, Mr. Singh would have no business knowing the content of Ms. Rogers' statement since he was a party to the investigation that was going to be undertaken. And so the administrative judge looked at that and the board itself quoted that testimony in its decision to support the administrative judge's finding that the agency approved interference because even if Ms. Gonzalez had asked Mr. Singh to collect a written statement from Ms. Rogers, it's absolutely clear that he wasn't instructed to oversee her actual writing of the statement and involve himself in the substance of what she was writing. And that was what the interference charge was based upon, was his involvement, as I said, injection into the substance of what Ms. Rogers was attempting to write beyond simply asking her to produce it. So the A.J. did not make a finding with respect to whether or not he was instructed to do something with respect to Ms. Rogers? That's correct, Your Honor, because in the board's view, that was immaterial because what he did was beyond simply going and getting a statement from Ms. Rogers. He involved himself in the substance of her statement and attempted to correct her, as I was saying, not only her use of pronouns and time, but as Ms. Rogers testified, Mr. Singh also attempted to correct Ms. Rogers when she started to report that she had seen slapping going on by both individuals against each other. He corrected her and said, no, there was no slapping. And at that point, she removed herself from the room and disposed of her statement and wrote it as she believed was accurate. Don't you think it's relevant, though, as to whether or not he was instructed to at least talk to her, oversee, or whatever word we want to use? Because that goes to, I mean, he thought he had a purpose. He was ordered to do something with respect to getting a statement from Ms. Rogers. Maybe he misconstrued that or maybe he had an ulterior motive. But isn't it relevant as to whether or not he was, in fact, instructed to make sure she did her statement or whatever? Your Honor, we don't believe it is relevant because, as I mentioned a moment ago, if the charge of interference was based solely on Mr. Singh going to Ms. Rogers and saying, please prepare a statement, then perhaps it would be an issue, certainly, as to whether he was instructed to do that or not. But what Mr. Singh was found by the administrative judge, based on the testimony from Ms. Rogers, was that what he did went far beyond that. So whether he was asked or not, as Ms. Gonzalez testified, as a supervisor himself, Mr. Singh certainly should have known that he had no business involving himself in the very substance of what Ms. Rogers was reporting. And it's also not relevant, Your Honor, to the extent that Mr. Salcido, the deciding official, determined in his analysis that even if Specification 2 wasn't part of the case, Specification 1, the fighting itself alone, provided substantial basis and grounds for the remittance penalty. So even if Specification 2 were taken out of the case, Specification 1 alone would have supported the remittance penalty. With respect to Specification 1, just briefly, Your Honor, there was testimony from multiple witnesses that what Mr. Singh did here went far beyond simply defending himself. Multiple witnesses testified that he was seen slapping J.S. himself, not simply defending himself. And the administrative judge specifically made credibility determinations based on the competing testimony from all of those witnesses versus Mr. Singh alone, who had a different story, and found the other witnesses to be credible. Regarding the penalty assessment, Mr. Singh's brief doesn't discuss the Douglas factors, but the deciding official's decision letter is clear that he engaged in a very thorough analysis, discussing all of the Douglas factors. Some of them he found to be mitigating, some of them aggravating. But on balance, he determined that removal was the only appropriate penalty in this case. The administrative judge reviewed that and found that there was substantial evidence. This court, on review, under the deferential standard we maintain, at a minimum, cannot conclude that that penalty under these facts as found by the administrative judge was grossly disproportionate based on the events that occurred. Briefly, I'll also just touch on the voucher decision that my opponent discussed. That appears to be the basis for Mr. Singh's challenge to the penalty that was assessed in this case. As the administrative judge found, however, the board's prior decision in the voucher case provides a series of factors that the board said may be appropriate in considering whether removal should be mitigated to a lesser penalty. But as the administrative judge found in this case, some of those factors did not actually tip in favor of Mr. Singh because, in fact, he was involved at the outset of this incident. His own testimony is that J.S. followed him for some 300 feet across the shop floor before the fight occurred. During any part of that time, he could have taken steps to contact postal police, as he had done on prior occasions, for both J.S. and for other employees when he was involved in potential altercations. And second, as the administrative judge found, unlike in the voucher case, there was also the second specification of interference here, which made this an entirely different case, such that the removal penalty, as the agency found, was certainly supported by the evidence. Unless the court has any further questions, we would ask that the court affirm the MSPB's decision. Thank you. I'd like to go back to the voucher decision. The administrative judge's decisions about the factors required ignoring the underlying facts in voucher and then making up a factual distinction later. The facts in voucher, that wasn't a case where voucher was attacked and defended himself. Voucher left the room after somebody who'd been harassing him for months threatened him, put down something, came back and punched the person he was attacking. He started the fight. Whether or not Mr. Singh was just defending himself or was fighting back is irrelevant. Both are far less than the degree of initiation that occurred in voucher. And in both of those, the degree of agitation was much, much lower in terms of what was done to voucher. Voucher was aggressively and hostily commented on, criticized. It was all verbal. There were threats of action. On the other hand, in this case, Mr. Singh was attacked by his underling. Now, the judge then makes this distinction based on the second charge that occurs at the same time. However, that's not one of the standards in voucher. And voucher does very specifically talk about the existence of prior discipline. Further, the fact that nobody decided that specification two was sufficient in and of itself to warrant termination makes whether or not there's the second specification itself a far less significant factor. In fact, Salcido didn't rule, very pointedly ruled the exact opposite. Not that specification two was enough on its own, but the specification one was enough on its own. And in doing so, yes, he performed a Douglas factor analysis. But in that Douglas factor analysis or secondary and additional to that Douglas factor analysis, there should have been a voucher analysis. When that mistake was done and it went on to the board, the board then had an obligation to perform a voucher analysis and didn't. The board instead, as I said, made up this additional factor so that it could write off voucher. But in doing so, ignored the underlying facts of voucher and how those compare differently. So that is that issue. And again, Your Honors, the issue is not whether or not these findings were based on substantial evidence. We can see that there is evidence in all of these. The issue is about the capricious judgment that the judge simply ignored fundamental rights that my client has under board law. And in doing so, put my client in a position where he faced far more severe discipline than he should have. And while we respect that this court may not be in the position to establish exactly what the penalty should be mitigated to, this court certainly has the option of sending this back down to one of the previous bodies and say mitigation is appropriate under this set of rules to one of the bodies that made the initial determinations to begin with. It looks like I've only got about eight seconds left, so I'm not going to bother bringing up a third issue. Thank you. We thank both sides. The case is submitted. That concludes our proceedings for this morning.